WILLIAM GROFF et al., complainants-respondents,

*v.*

MARGARET B. STITZER et al., defendants-appellants.

[Argued March 8th, 1910.  Decided June 20th, 1910.]

A bank accepted stock standing in the name of a third party, endorsed in blank as security for a loan to one of its customers. It had notice that the owner of the stock was an invalid, and the cashier wrote asking her if the endorsement was genuine. He received a reply, signed by the invalid, confirming the signature. It subsequently appeared that the invalid was of unsound mind.—*Held*, notice to the bank that the owner was an invalid was not notice that the owner was of unsound mind. Under the circumstances, the bank was entitled to a lien upon the stock for the residue of the debt of its customer thereon, after first exhausting its remedy against other collateral for the same debt and against its customer individually.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, whose opinion is reported in 75 *N. J. Eq.* (*5 Buch.*) 455.

*Messrs. Grey & Archer,* for the appellants.

*Mr. James Fisher,* for the respondents.

The opinion of the court was delivered by

DILL, J.

This is an appeal from a decision of Vice-Chancellor Howell in an action by the executors of the will of Caroline Bowers, deceased, to set aside a transfer, made by her during her lifetime, of thirty-two shares of the capital stock of the Essex County National Bank.

These certificates were endorsed in blank by Mrs. Bowers and delivered to James H. Stitzer, Jr., the son of Margaret Stitzer, who was a stepdaughter of Mrs. Bowers. The transfer to James Stitzer was not absolute, but was merely for the purpose of enabling him to use the stock as collateral security for certain promissory notes which he proposed to have discounted at the Quaker City National Bank of Philadelphia. After receiving the certificates, Stitzer pledged them with the bank as collateral security for loans made by the bank amounting to $4,300. He also pledged with the bank, as collateral for these loans, four shares of stock of the Morristown National Bank, belonging to his mother, and loaned to him by her for that purpose.

While the stock in the name of Mrs. Bowers was in the possession of the bank, at the request of James H. Stitzer, Jr., and upon presentation of a power of attorney and assignment executed by Mrs. Bowers, the bank sent it for transfer from the name of Caroline Bowers to the name of Margaret Stitzer, and a new certificate in the name of Margaret Stitzer, endorsed by her, was returned to the bank in place of the old certificates.

Margaret Stitzer now claims to be the owner of this stock by virtue of the transfer.

The vice-chancellor decided that, on the facts proved, Mrs. Bowers was so enfeebled, mentally and physically, as to be under

the domination and control of Mrs. Stitzer and her son; and that, in order to sustain the transfer of this stock, or of any interest therein, to them, the burden rested upon them to show that it was the voluntary, well-understood act of the donor.

He held that they had failed to bear this burden, that as to them the transfers were void, and that the complainants were entitled to the relief sought.

In this respect we concur in the vice-chancellor's conclusion and for the reasons stated in his opinion.

But the court below went further and decided that the Quaker City National Bank was chargeable with notice of the mental condition of Mrs. Bowers, and that the bank had no claim on the stock which could be asserted against the complainants.

The evidence was that when Stitzer offered Mrs. Bowers's stock as collateral for the loan which he sought, the bank, through its cashier, before accepting the same, wrote the following letter:

"THE QUAKER CITY NATIONAL BANK
OF PHILADELPHIA.

*June* 25th, 1907.

"*Mrs. Caroline Bowers,*
*Hackettstown, N. J.:*

"DEAR MADAM—Mr. James Herbert Stitzer, Jr., has left with us thirty-two (32) shares of the Essex County National Bank, standing in your name and endorsed by you with the signature of Margaret B. Stitzer as witness.

"As is customary in such cases I wish to confirm the genuineness of your signature to the certificates, there being two of sixteen shares each. Mr. Stitzer advises me that you are quite an invalid. You can therefore have some one else write the letter, simply stating the signature is correct, if such is the case, then you sign it.

"Yours very truly,

"W. D. BRELSFORD,
*Cashier.*"

Two days later Mrs. Stitzer wrote a reply to the bank, signed by Mrs. Bowers and herself, as follows:

"HACKETTSTOWN, June 27th, '07.

"DEAR SIR—Your letter received. Mrs. Bowers is quite an invalid. But I will have her sign this letter same as the certificates which she signed. I hope it will prove satisfactory.

Yours,

"*M. B. Stitzer.* "CAROLINE BOWERS."

The vice-chancellor held that because the bank knew that Mrs. Bowers was quite an invalid, so much so that she was unable to reply to the cashier's inquiry in a letter written by her own hand, and because it knew that the stock in question belonged to Mrs. Bowers, therefore the burden of inquiring into the extent, nature and character of Mrs. Bowers' invalidism was cast upon it. He further held that if the bank had investigated this matter, it would have learned that Mrs. Bowers was a paralytic; that her mental powers were much impaired, and that she had been induced to part with her stock by undue influence exercised over her by the Stitzers.

Although the question is a close one, nevertheless it seems to us that this view of the situation works an injustice to the bank. Invalidism and mental incompetency are entirely different. Knowledge of the one does not, of necessity, carry with it notice of the other. The bank knew that Mrs. Bowers was an invalid, so much so that writing letters was a burden upon her, but there is nothing in the record to show that it knew, or ought to have anticipated, that her invalidism was anything more than an affection of the body. The bank was not required, merely because of this knowledge, to investigate the question of the mental capacity of Mrs. Bowers; it was justified in assuming that she was mentally normal until facts were brought to its notice which ought to have suggested the contrary. It seems to us, further, that the bank did everything it could in reason be asked to do to protect itself. Having in its possession the stock with a blank transfer in the ordinary form endorsed thereon, it wrote to the owner of the stock to verify the endorsement on the transfer. The letter, which it received in reply, contained nothing, we think, to suggest mental incapacity, but rather justified the bank in doing what it did.

The decree should be modified by providing that the bank is entitled to a lien upon the thirty-two shares of stock which it holds to the extent of the residue of the debt of James H. Stitzer, Jr., upon the loans which the bank made upon the faith of this collateral, but the rule of *Shannon* v. *Marselis, 1 N. J. Eq.* (*Sax.*) *413,* and the decisions which have followed it, should

be applied to the case at bar. The order in which the bank shall exhaust its legal remedies is to be as may be determined by the court of chancery upon proper application.

The decree as to the defendants Margaret B. Stitzer and James H. Stitzer, Jr., is therefore affirmed. As to the defendant, the Quaker City National Bank of Philadelphia, the decree is reversed for the purpose of modification.

The cause is accordingly remitted to the court of chancery with instructions to proceed in accordance with the views herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL—13.